FILED

**UNITED STATES DISTRICT COURT** 2019 MAY -3  AM 11: 20
**MIDDLE DISTRICT OF FLORIDA**

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

Case No:

2:19-cv-257-FtM-99UAM

**DIMITRI PATTERSON,**

Plaintiff,

**DEMAND FOR JURY TRIAL**

vs.

**VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE
RELIEF**

**MIAMI HERALD MEDIA
COMPANY,**

**THE MCCLATCHY COMPANY,**

Defendants,

**GENERAL DEFAMATION
DEFAMATION PER SE
DEFAMATION BY IMPLICATION
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS
INVASION OF PRIVACY – FALSE
LIGHT
PUNITIVE DAMAGES
INJUNCTIVE RELIEF
GENERAL DAMAGES**

_____

# INTRODUCTION

1.      This action is brought by the Plaintiff, Dimitri Patterson, against Defendants, The

McClatchy Company (MC)., parent company, and the Miami Herald Media Company, a

daily newspaper, hereinafter (MH), subsidiary, arising from three articles published online

and on www.miamiherald.com under the headlines, "*When former Miami Dolphin bolted*

*from courtroom, it took five cops to take him down, "Former Dolphins Player bolts from*

*courtroom, injures two police officers*" and "*A Former Dolphin had a warrant out for his*

*arrest. Police found him in Orange County*". MC and MH by way of the Internet

disseminated the articles globally and throughout the state of Florida.

1

2.      The McClatchy Company is a publishing company that operates 30 media companies in 14 states, providing each of its communities with news and advertising services in a wide array of digital and print formats. MC is the publisher of the Miami Herald Media Company, and through its agent (MH), MC has significant business contacts with the State of Florida. *See 2018 Securities Exchange Commission Annual 10k Filing*. **"See Exhibit E"**

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and both Plaintiff and the Defendant are citizens of different states.

4.      Venue is proper pursuant to 28 U.S.C 1391, as the Defendants' are subject to this Court's personal jurisdiction, because the Defendants' actions are directed to the Forum State of Florida.

5.      This action does not violate the Due Process Clause of the Fourteenth Amendment. The actions of MC and MH within the state of Florida are sufficient to satisfy the demands of due process. *Hutchinson v. Chase & Gilbert,* 45 F.2d 139, 141

6.      Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir.1997)*

7.      The McClatchy Company, and its agent, subsidiary, and co-defendant, the Miami Herald Media Company, has and currently engages in business in this state and has an office located at 3511 NW 91 Avenue, Miami, FL 33172. MC and MH are "essentially at home" in the State of Florida. **"See Exhibit A"**

8.     While engaging in business in the State of Florida, The McClatchy Company, and its agent, subsidiary, and co-defendant, the Miami Herald Media Company, has committed the tortious act of defamation, which has injured the Plaintiff. **"See Exhibit A"**

9.     The McClatchy Company, and its agent, subsidiary, and co-defendant, the Miami Herald Media Company currently disseminates articles in digital and print format throughout Miami, FL and the State of Florida, where the Plaintiff resides. This proves a "continuous and systematic relationship" with the State of Florida. **"See Exhibit A"**

10.     The McClatchy Company owns and publishes the Miami Herald. *See 2018 Securities Exchange Commission Annual 10k Filing stating "We are the publisher of the Miami Herald......",* **"See Exhibit E"**

11.     The McClatchy Company, and its agent, subsidiary, and co-defendant, the Miami Herald Media Company owns, uses, or, possess real property in the State of Florida, which is located at 3511 NW 91 Avenue, Miami, FL 33172. **"See Exhibit E"**

12.     Any evidence or affidavits presented by MC and MH disputing jurisdiction will present conflict in favor of the Plaintiff. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F. 3d 1357, 1360 (11th Cir. 2006); *Molina v. Merrit & Furman,* 207 F.3d 1351, 1356 (11th Cir. 2000); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1998) stating "Where the plaintiff's evidence and the defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff."

# PARTIES

13.     Plaintiff, Dimitri Patterson (hereinafter DP), was and continues to be *sui juris* over the age of 18 and a citizen of the State of Florida.

14.     At all times, material hereto, the Defendant, The McClatchy Company (hereinafter MC), a corporation organized and existing under the laws of the State of Delaware who is registered with the Delaware Department of State with its principle place of business in Sacramento, California, is the owner of the Miami Herald Media Company. **See Exhibit "E"**. MC is the "information content provider" pursuant to 47 U.S.C. § 230 (f)(3) and is liable for their subsidiary's actions pursuant to *Florida Statute 836.03*. MC has substantial contacts with the State of Florida through its agent MH.

15.     At all times, material hereto, the Defendant, the Miami Herald Media Company (hereinafter MH), a corporation organized and existing under the laws of the State of Delaware who is registered with the Delaware Department of State with its principle place of business in Sacramento, California. MH is the content provider pursuant to 47 U.S.C. § 230 (f)(3). **See Exhibit "E"**

## STATEMENTS OF FACTS

### DP's Background

16.     DP was born in Miami, FL and is 35 years of age and is a resident of the State of Florida.

17.     DP played in the NFL for ten years.

18.     DP has one biological child who is 11-years-old.

19.     DP has never been charged with a crime by the State of Florida pursuant to Florida law.

20.     DP has never had a warrant issued in his name pursuant to Florida rules of Criminal Procedures 3.121 and 3.131

## SATISFACTION OF CONDITION PRECEDENT

21.     Plaintiff, DP, has provided notice to the Defendant as required by Fla. Stat. 770.01, and has satisfied all conditions precedent to the filing of this lawsuit. The Defendant has waived all conditions precedent to the filing of this lawsuit. True and correct copies of the Fla. Stat. 770.01 Notice Letters are attached hereto, see **Exhibit "D"**.  The notice demands for retractions of the defamatory and libelous statements, which have not been complied with by the Defendant by way of publishing any such retractions.

### DEFAMATORY STATEMENTS BY THE MIAMI HERALD ARTICLES

22.     On August 15, 2017, Charles Rabin authors the defamatory article titled, *"Former Dolphins Player bolts from courtroom, injures two police officers"* (hereinafter Article 1), which MC and MH published online to third parties globally and throughout the state of Florida. See attached hereto as **Exhibit "A"**.

23.     On August 16, 2017, Charles Rabin, an employee of MC and MH, authors another defamatory article titled, *"When former Miami Dolphin bolted from courtroom, it took five cops to take him down"* (hereinafter Article 2), which MC and MH published online to third parties globally and throughout the state of Florida. See attached hereto as **Exhibit "B"**.

24.     On May 8, 2018, Jordan Mcpherson, an employee of the MC and MH, authors a defamatory article titled, *"A Former Dolphin had a warrant out for his arrest. Police found him in Orange County"* (hereinafter Article 3). See attached hereto **Exhibit "C"**.

25.     The articles are false and defamatory in their overall portrayal of DP as a violent, impulsive, unstable, heartless, cruel person who is abusive to women and children, and a fugitive evading felony charges. The articles are also false in many of their particulars. This

action is predicated on when the three articles were published and what the Articles communicate as a whole, including the headlines, captions, and the numerous defamatory statements concerning the Plaintiff, DP, contained within the article. All three articles are hearsay and lack a <u>verified source.</u>

26.   The three Articles has and currently garner significant views where DP former and current residences of Miami and Orlando, FL are, and where the Plaintiff's reputation was and continues to be significantly injured. **See Exhibit "A"**

## ARTICLE 1

27.   Initially, Article 1 attempts to assassinate DP's character by stating that, "Dimitri Patterson left two Miami-Dade Police officers injured on Tuesday after he bolted from a courtroom when a judge ordered him placed under custody, police said", which is false. See **Exhibit "A"**

28.   Article 1 then states that, "Dimitri Patterson is expected to face charges including battery on a law enforcement officer", which is false. DP was never facing charges. See **Exhibit "A"**

29.   Article 1 continues by stating that, Dimitri Patterson "was at the Lawson E. Thomas Courthouse in downtown Miami at a hearing before Judge William Altfield", which is completely false. See **Exhibit "A"**

30.   Article 1 makes false claims stating that, "The judge ordered Dimitri Patterson to be taken into custody and he took off running", said Argemis Colome, a spokesperson for the Miami-Dade Police. This statement is completely false. See **Exhibit "A"**

31.   Article 1 states that, "Dimitri Patterson knocked down a female police officer who hit her head", Colome said, which is completely false. See **Exhibit "A"**

32.     Article 1 states that, "A male officer suffered a wrist injury", which is false. See **Exhibit "A"**

33.     Article 1 continues character assassination of DP by writing about a purported arrest affidavit that was already proven to be an unlawful arrest and charges that were never filed against him. **See Exhibit "A"**

34.     Article 1 goes on to state that, "Dimitri Patterson was there to meet the mother of his 1-year-old son", which is completely false. See **Exhibit "A"**

35.     With the intent to cause irreparable harm to DP, Article 1 continues to recite defamatory statements in an ESPN.com article stating that, "Dimitri Patterson threw a woman and her son to the ground, causing the woman and child to suffer bruises on her neck and the back of the child's head", which are false.

36.     Article 1 continues to makes false claims by stating that, "Dimitri Patterson was acquitted by a jury for culpable negligence and battery in July."

## ARTICLE 2

37.     Article 2 states that, "When former Miami Dolphins Cornerback Dimitri Patterson tried to bolt from a hearing in family court Tuesday, it took five Miami-Dade police officers to tackle him and get him under control" which is completely false. See **Exhibit "B"**.

38.     With clear malice intent by having full knowledge that the statements are false, Article 2 proceeds to recite every defamatory statement written in Article 1. See **Exhibit "B"**

## ARTICLE 3

39.     Article 3 states that, "The Orange County Sherriff Office arrested Dimitri Patterson late Monday night for an active felony warrant" which is false. See **Exhibit "C"**.

40.     Article 3 continues by stating that "The charges from the warrant, according to his booking log: battery and culpable negligence", which is false. See **Exhibit "C"**.

41.     Article 3 continues with character assassination by stating that, "This news and arrest comes nine months after Patterson became combative while trying to flee a Miami-Dade County courtroom in August", which is completely false. See **Exhibit "C"**.

42.     Article 3 continues stating that, "It took five police officers to tackle him and get him under control", which is completely false. See **Exhibit "C"**.

## FALSITY

43.     All three Articles are false in their overall portrayal of DP as a violent, impulsive, unstable, heartless, cruel person, who is abusive to women and children, and a fugitive evading felony charges. The Articles are also defamatory in many of their specific details.

44.     DP never injured any police officers while running out of a courtroom at the Lawson E. Thomas Courthouse in downtown Miami, nor did a Judge order for him to be taken into custody. There are cameras outside and inside the courtroom, which supports this and there are no official judicial proceedings or documentation that exists of a judge holding DP in contempt of court.

45.    DP was never facing the charge of battery on a law enforcement officer, nor was there a legal hearing requiring DP to be at the Lawson E. Thomas Courthouse. You must first have a valid case number with a legal charging document on file. This can easily be proven by requesting copies of certified court records from the Clerk.

46.    Article 1 states that they received comments from Miami-Dade Police spokesperson, Argemis Colome. This statement is completely false, for Article 1 fails to quote the spokesperson identified as Argemis Colome. Instead, the articles are filled with reckless statements on behalf of a purported person. In addition, there is no record of an <u>official</u> statement from a Miami Dade Police officer.

47.    DP does not have a 1-year-old son, nor did he do any of the defamatory statements in the ESPN.com article that Article 1 recited.

48.    DP was never legally acquitted of battery and culpable negligence by a jury in July, because he was never legally charged with those two crimes. You cannot acquit a person of a crime that they were never charged with pursuant to Florida law.

49.    DP has never had a warrant issued for his arrest with the purported charges of battery and culpable negligence.

50.    The Orange County Sherriff's Office did not find DP in Orlando, nor did they arrest him on a warrant.

## MALICE

51.    Malice is defined as, when a statement is made with knowledge that it was false, or, reckless disregard, whether it was false or not. *New York Times Co v. Sullivan* 376 U.S. at 279-80 (1964). The Defendant's state of mind can be proved circumstantially as well. *See St. Amant v. Thompson*, 390

U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983). A Defendant must prove truth in defamation cases, because the common law presumes any statement made with defaming effect was false. *Jones, Varnum & Co. v. Townsend's Administratrix*, 21 Fla. 431 (1885). Accord, *Firestone v. Time, Inc.*, 460 F.2d 712, 722 (5th Cir. 1972) (Bell, J. concurring); *Curtis Publishing Co. v. Fraser*, 209 F.2d 1, 9 n. 6 (5th Cir. 1954); *Drennen v. Westinghouse Elec. Corp.*, 328 So.2d 52, 55 (Fla. 1st DCA 1976); *Miami Herald Publishing Co. v. Brautigam*, 127 So.2d 718, 723 (Fla. 3d DCA 1961).

52.    Inasmuch as defendants did not know the statement was false, plaintiff's claim rests on proof of a reckless disregard of whether it was false or not. To satisfy the reckless disregard standard, plaintiff had to establish that defendants in fact " `entertained serious doubts as to the truth of the publication' " or that they actually had a "'high degree of awareness of its probable falsity'" (*Harte-Hanks Communications v Connaughton*, 491 US 657, 667,.

53.    The Defendant had no qualified privilege to make false and defamatory statements against the Plaintiff, nor was there any interest, or, a legal, moral, or, social duty in regard to a certain subject (Dimitri Patterson), when speaking to another "having a corresponding interest or duty." Examples: "a communication to an employer regarding his employee's performance"; "communications for bona fide commercial purposes where the interest to be protected is the recipient's"; "statements of a citizen to a political authority regarding matters of public concern."

54.    Whether there was a privilege, apart from the question of its abuse, may be determined by the court, if the evidence is undisputed. *Nodar v. Galbreath*, 462 So.2d 803 (Fla. 1984); See, *e.g.*, *Knepper v. Genstar Corp.*, 537 So.2d 619 (Fla. 3d DCA 1988); *Drennen v. Westinghouse Electrical Corp.*, 328 So.2d 52 (Fla. 1st DCA 1976). Contrast *Nodar*, 462 So.2d at 810. The evidence shows that the Defendant did not publish the defamatory article in truth, or, with good motive. The objective was simply to secure an irresistible story at the expense of the Plaintiff's reputation and well-being. In Florida, a defendant is at fault if he was at least negligent. *Miami Herald Publishing Co. v. Ane*, 458 So.2d 239 (Fla. 1984).

55.    On March 15, 2018, the Plaintiff mailed MC and MH a notice of defamation pursuant to Florida

statute 770.01. Rick Hirsch, managing editor of the Miami Herald, responds via mail saying, "I have reviewed your request for corrections, but find that the article accurately reported what was contained in the official arrest affidavit, a copy of which is attached". This reckless, personal, and incompetent response unequivocally exhibits the malicious intent to defame the Plaintiff's good name. **See Exhibit "D"**

## PROBABLE CAUSE AFFIDAVITS

### AFFIDAVIT 1

56.   There are two probable cause arrest affidavits filed with the Miami-Dade County Clerk of Courts. On August 15, 2017, Affidavit 1 states that the Plaintiff was arrested at 14:30, listing the charge as a warrant for a traffic citation.

### AFFIDAVIT 2

57.   Affidavit 2 states that the Plaintiff was arrested at 15:45, listing one count of battery on a Police Officer and six counts of resisting an Officer with violence. Affidavit 2 shows a sworn signature by Police Officer Nieves (court id 030-04888-09027) on August 16, 2018. MC published their defamatory article on August 15, 2018, by citing inaccurate details from Affidavit 2 by way of purported statements from an <u>unverified source</u>.

58.   If a sworn probable cause affidavit was executed on August 16, 2017, how could it be possible that MC and MH published their article on August 15, 2017, before the sworn affidavit and final police report were executed? It's impossible for MC and MH to have published a story before the alleged incident happened.

59.   There is no <u>official statement</u> by a government official documented on August 15, 2017.

60.     The evidence proves MC and MH knew the statements were false because they published the defamatory articles before a sworn probable cause and final police report was executed, nor is there an official statement by a government official or proof of a warrant in the name of Dimitri Patterson.  This proves MC and MH had a high degree of awareness of the Articles falsity.

61.     MC and MH purposefully avoided verifying an official statement by a government official, this "inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the published statements (*Harte-Hanks Communications v Connaughton*, 491 US, at 692,  This proves the intentional avoidance of truth. See **Exhibit "A"**.

62.   The  Articles fall well short of an authentic news dispatch because it lacks verified sources and are hearsay.

63.    The abhorrent actions show clear malice with the intent to cause irreparable harm to the Plaintiff, in addition to exhibiting the highest degree of flagrancy and gross negligence. The injuries inflicted on the Plaintiff in this action are immeasurable. **See Exhibit "A"**

64.     MC and MH imputed multiple felonies to the Plaintiff.  A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are "… of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236

## NO FAIR REPORTING PRIVILEGE

65.     A newspaper 'has a qualified privilege to report accurately on information received from <u>government officials</u>. The privilege extends to the publication of the contents of <u>official documents,</u> as long as the account is reasonably accurate and fair.' *Rasmussen v. Collier County Pub. Co.*, 946 So.2d 567, 570-71 (Fla. 2d DCA 2006). 'This statement merely means that the report of <u>judicial proceedings</u> must be correct.' *Walsh v. Miami Herald Pub. Co.*, 80 So.2d 669, 671 (Fla.1955).

66.     There is no evidence that proves MC and MH republished accurate, fair, and impartial statements from a <u>government official,</u> or, obtained information from <u>official court proceedings</u> and records which constitutes deliberate avoidance of the truth by the Defendants.

67.     A final police report was never reported on. Therefore, the Fair Reporting Privilege is not a viable defense for the Defendant.

68.     There are no official records that detail official judicial proceedings in this action. The unlawful arrest of the Plaintiff on August 15, 2017, was not an official judicial proceeding, nor was there an official arrest warrant presented at the time of the unlawful arrest on May 7, 2018.

69.     The evidence proves that a probable cause affidavit and final police report were not executed at the time of the defamatory article, which proves MC and MH purposefully avoided the truth. See **Exhibit "A"**.

70.   The evidence proves MC and MH cannot and will not prove they received an official statement from a government official before the defamatory articles were published which proves MC and MH had reckless disregard of the truth. See **Exhibit "A"**

71.   The evidence proves MC and MH cannot and will not prove they received an official police report from the Miami- Dade County Clerk of Court before the defamatory articles were published.

72.   The evidence shows MC and MH cannot and will not prove they received an official warrant pursuant to Florida Rules of Criminal Procedure 3.121 and 3.131 before publishing the Article, which proves MC and MH deliberately avoided finding the facts.

73.   The evidence proves that all of MC and MH sources are <u>unverified</u> and <u>do not exist</u>.

74.   Out of their own imagination, MC and MH, published the Articles with negligence, gross irresponsibility, and with actual malice. MC and MH knew that they were publishing a devastating portrait of the Plaintiff as a violent, impulsive, unstable, heartless, and cruel person without any <u>verified source</u> to support their Articles.

75.   "Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an <u>unverified anonymous telephone call</u>. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to

doubt the veracity of the informant or the accuracy of his reports". *St. Amant v. Thompson,*
390 U.S. at 732, 88 Ct. 1323.

76.     Here, the evidence proves the MC and MH Articles are based wholly on <u>unverified</u>
anonymous sources. See **Exhibit "A"**

77.     MC and MH cannot and will not prove they reported on an official judicial proceeding.

78.     With full knowledge of the absence of a <u>verified official statement</u> from a government
official or <u>official records,</u> MC and MH knowingly, maliciously, and recklessly published
defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to
disseminate the defamatory statements throughout the Internet and the State of Florida.

79.     There are no official records that detail official judicial proceedings in this action. The
unlawful arrest of the Plaintiff on August 15, 2017 was not an official judicial proceeding.

80.     The Defendants had obvious reasons to doubt the veracity of the information reported
because there was no evidence of official records or an official statement from a government
official when MC and MH published the Articles.

81.     This was the case where the articles published were a complete fabrication with no
<u>official statement by a government official</u> in existence when MC and MH published the
Articles, which proves that MC and MH knew the statements were false and purposefully
avoided the truth.

82.     The evidence proves that MC and MH published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendants had a high degree of awareness of the falsity of the publications.

83.     To publish defamatory statements without an official statement by a government official or, official records, is a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the defamatory statements proving that only a reckless publisher such as MC and MH would have put such allegations into circulation.

## COUNT 1
## (General Defamation)
## The McClatchy Company

84.     The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 52, 58-61, 63-72, inclusive, as it is fully stated herein.

85.     On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MC, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

86.     The Defendant's defamatory statements were not privileged.

87.     Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

88.     The Defendants had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when MC and MH published the Articles.

89.     Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the McClatchy Company and The Miami Herald's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

### COUNT II-
### (Defamation Per Se)
### The McClatchy Company

90.     The Plaintiff re-alleges each and every allegation in paragraphs 22-23,27-28, 31-32, 35, 38-39, & 41 inclusive, as it is fully stated herein

91.     On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MC, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

92.     The Defendant's defamatory statements were not privileged.

93.     Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

94.     The Defendant imputed multiple felonies to the Plaintiff.

95.     Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the McClatchy Company and The Miami Herald's cynical

exploitation of the reputation of Dimitri Patterson in paragraphs 22-23,27-28, 31-32, 35, 38-39, & 41, and as a result, he is entitled to damages and injunctive relief.

96.     A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
## (Defamation by Implication)
## The McClatchy Company

97.     The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 52,58-61, 63-72, inclusive, as it is fully stated herein

98.     On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MC, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

99.     The Defendant's defamatory statements were not privileged.

100.    Defamation by implication is an intentional tort recognized in Florida. See *Jews*

*for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

101.    The Defendant maliciously published the false statements about the Plaintiff, and these

18

statements were defamatory in that they created false impressions of the Plaintiff.

102.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them, or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

103.    A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

104.    The false impression of the Plaintiff given in paragraphs 22-50, 52,58-61, 63-72, which the Defendant created, caused irreparable harm to the Plaintiff, his reputation, and person therefore, he is entitled to damages and injunctive relief.

## COUNT IV
## (Intentional Infliction of Emotional Distress)
## The McClatchy Company

105.    The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 59-61, & 69-72, inclusive, as it is fully stated herein.

106.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

107.    The defamatory statements described in paragraphs 22-42 constitute outrageous conduct against Plaintiff.

108.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

109.     A reasonable person in the Plaintiff's position would consider the Defendant's conduct as outrageous.

110.     The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

# COUNT 1
## (General Defamation)
## Miami Herald Media Company

111.     The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 52, 58-61, 63-72, inclusive, as it is fully stated herein.

112.     On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MH, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

113.     Defendant's defamatory statements were not privileged.

114.     Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

115.     Here, the evidence proves the MH Articles are based wholly on unverified anonymous sources.

116.     MH cannot and will not prove they reported on an official judicial proceeding.

117.     This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when MH published the Articles, which proves that MH knew the statements were false and purposefully avoided the truth.

118.    The evidence proves that MH published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

119.    With full knowledge of the absence of a verified official statement from a government official, or, official records, MH knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

120.    The Defendants had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when MH published the Articles.

121.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the McClatchy Company and The Miami Herald's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT II
### (Defamation Per Se)
### Miami Herald Media Company

122.    The Plaintiff re-alleges each and every allegation in paragraphs 22-23, 27-28, 31-32, 35, 38-39 & 41 inclusive, as it is fully stated herein.

123.    On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MH, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se*.

124.    The Defendant's defamatory statements were not privileged.

125.     Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

126.     The Defendant imputed multiple felonies to the Plaintiff.

127.     Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the McClatchy Company and The Miami Herald's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 22-23,27-28, 31-32, 35, 38-39 & 41 as a result he is entitled to damages and injunctive relief.

128.     A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)
### Miami Herald Media Company

129.     The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 52, 58-61, 63-72, inclusive, as it is fully stated herein.

130.     On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MH, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation by implication.

131.     The Defendant's defamatory statements were not privileged.

132.     Defamation by implication is an intentional tort recognized in Florida. See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of character that happens from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts.

133.     The Defendant maliciously published the false statements about the Plaintiff, and these statements were defamatory in that they created false impressions of the Plaintiff.

134.     The Defendant severely juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

135.     A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

136.     The false impression of the Plaintiff given in paragraphs 22-50, 52, 58-61, 63-72, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
## (Intentional Infliction of Emotional Distress)
## Miami Herald Media Company

137.     The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 59-61, & 69-72, inclusive, as it is fully stated herein.

138.     The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

139.     The defamatory statements described in paragraphs 22-42 constitute outrageous conduct

against the Plaintiff.

140.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the
        alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless
        disregard of the high probability of causing the Plaintiff to suffer emotional distress.

141.    A reasonable person in Plaintiff's position would consider Defendant's conduct as
        outrageous.

142.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the
        Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and
        proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive
        relief.

## COUNT V
## (Invasion of Privacy – False Light)
## Miami Herald Media Company

143.    The Plaintiff re-alleges each and every allegation in paragraphs 22-50, 52, 58-61, 63-72,
        inclusive, as it is fully stated herein.

144.    On August 15, 2017, August 16, 2017, and May 8, 2018, Defendant, MH, wrongfully
        and with actual malice and gross negligence, caused to be published the statements set forth
        above. The published statements by the Defendant portrayed the Plaintiff in a false light to
        the public.

145.    Defendant's defamatory statements were not privileged.

146.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

147.    Here, the evidence proves the MH Articles are based wholly on unverified anonymous
        sources.

148.    MH cannot and will not prove they reported on an official judicial proceeding.

149.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when MH published the Articles, which proves that MH knew the statements were false and purposefully avoided the truth.

150.    The evidence proves that MH published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

151.    The Defendant has interfered with the Plaintiff's right to be left alone.

152.    The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

153.    A reasonable person will find the Defendant's publication to be highly offensive.

154.    As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

155.    With full knowledge of the absence of a verified official statement from a government official, or, official records, MH knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the McClatchy Company and The Miami Herald's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

# Relief

**WHEREFORE,** Plaintiff respectfully demands judgment against the Defendants as follows:

A.   A judgment for actual damages in the amount of Three Hundred Million ($300,000,000.00) dollars).

B.   Presumed Damages in an amount to be determined by the court, but in no circumstances less than sixty million ($60,000,000.00) dollars.

C.   Punitive Damages against the Defendant in the amount of sixty million (60,000,000.00) dollars or at least 10% of the Defendant's net worth, whichever is greater, to punish and impress upon Defendant the seriousness of their conduct and to deter similar conduct in the future.

D.   Preliminary and Permanent Injunctive Relief ordering the removal of defamatory Articles 1, 2 & 3 from www.miamiherald.com and all online search engines worldwide for eternity.

E.   A full and fair correction, apology, or retraction was, in the case of a newspaper or periodical, published in the same editions, or, corresponding issues of the newspaper, or, periodical in which said article appeared, and in a conspicuous place and typed as said original article.

F.   For such other and further relief for the Plaintiff, as the Court deems just and equitable.

Dimitri Patterson
16877 East Colonial Drive
Unit 403
Orlando, FL 32820
prolificdezigns@gmail.com
407-777-2269 phone

## Verification

Pursuant to 28 U.S.C. § 1746 I, Dimitri Patterson, declare as follows:

1. I am a Plaintiff in the following case and a citizen in the United States of America and a resident of Florida.

2. I have personal knowledge of the factual statements set forth in the foregoing *Verified Complaint for Damages and Injunctive Relief,* and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty and perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning myself and the actions of the McClatchy Company are correct.

Executed on May 1, 2019.

Dimitri Patterson

16877 E. Colonial Dr.
Unit 403
Orlando, FL. 32820

28

# MEMORANDUM OF LAW

Defamation is defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. *Wolfson v. Kirk,* 273 So. 2d 774 (Fla. 4th DCA 1973). To establish a cause of action for defamation, a plaintiff must show; (1) That the defendant published a false statement about the plaintiff; (2) To a third party; and (3) That the falsity of the statement caused injury to the Plaintiff. *See Razner v. Wellington Regional Med. Ctr.* Defamation. *Id.* Also, statements of pure opinion are not actionable. *Florida Med. Ctr. Inc. v. New York Post Co., Inc.,* 568 So. 2d 454 (Fla. 4th DCA 1990).

There are four categories of statements that constitute libel per se:

1. **Imputing to another a criminal offense amounting to a felony.**
2. Imputing to another a presently existing venereal disease or other loathsome and communicable disease;
3. Imputing to another, the other being a woman, acts of unchastity;
4. Imputing to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office.

*See Wolfson,* 273 So. 2d at 777 *(internal citations omitted).*

**ACTS SUBJECTING PERSON TO JURISDICTION OF COURTS OF STATE.**

Florida Statute 48.193

(1)(a)   A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1.   **Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.**
2.   **Committing a tortious act within this state.**
3.   **Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.**
4.   Contracting to insure a person, property, or risk located within this state at the time of contracting.
5.   With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.
6.   **Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury,** either:
a.   **The defendant was engaged in solicitation or service activities within this state;** or
b.   **Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.**
7.   Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
8.   With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.
9.   Entering into a contract that complies with s. 685.102.

(b)  Notwithstanding any other provision of this subsection, an order issued, or a penalty or fine imposed, by an agency of another state is not enforceable against any person or entity incorporated or having its principal place of business in this state if the other state does not provide a mandatory right of review of the agency decision in a state court of competent jurisdiction.